# 16 MAG 8232 ORIGINAL

Approved: _Thane Rehn_
DANIEL NOBLE/NICOLAS LANDSMAN-ROOS/
DANIELLE SASSOON/THANE REHN
Assistant United States Attorneys

Before:   THE HONORABLE RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

*U.S. DISTRICT COURT*
*FILED*
*DEC 21 2016*
*S.D. OF N.Y.*

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - v. -

KRISTAPS NAGLIS,

                Defendant.

- - - - - - - - - - - - - - - - - - X

SEALED

**COMPLAINT**

Violations of
18 U.S.C. §§ 1349,
1956(h), and
31 U.S.C. § 5324

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

       CHRISTINA FOX, being duly sworn, deposes and says that she is a Special Agent with Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE

(Conspiracy to Commit Wire Fraud and Bank Fraud)

     1.   From at least in or about March 2016, up to and including the present, in the Southern District of New York and elsewhere, KRISTAPS NAGLIS, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344.

     2.   It was a part and object of the conspiracy that KRISTAPS NAGLIS, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause

to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

3.     It was further a part and object of the conspiracy that KRISTAPS NAGLIS, the defendant, and others known and unknown, willfully and knowingly, executed, or attempted to execute, a scheme or artifice to defraud a financial institution, in violation of Title 18, United States Code, Section 1344.

### Overt Act

4.     In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York:

a.     On or about April 20, 2016, KRISTAPS NAGLIS, the defendant, opened a bank account at a branch of a bank whose deposits are insured by the Federal Deposit Insurance Corporation ("Bank-1") in Manhattan, New York in the name of a shell company controlled by NAGLIS and his co-conspirators.

b.     On or about September 15, 2016, NAGLIS withdrew funds from a bank account at a Bank-1 branch located in Manhattan, New York.

(Title 18, United States Code, Section 1349)

### COUNT TWO

(Conspiracy to Commit Money Laundering)

5.     From at least in or about March 2016 up to and including the present, in the Southern District of New York and elsewhere, KRISTAPS NAGLIS, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

6.     It was a part and an object of the conspiracy that KRISTAPS NAGLIS, the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial

transaction represented the proceeds of some form of unlawful activity, would and did knowingly conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud and bank fraud conspiracy charged in Count One of this Complaint, knowing that the transaction was designed in whole and in part to avoid transaction reporting requirements under State and Federal law.

(Title 18, United States Code, Section 1956(h))

## COUNT THREE
(Structuring)

7.    In or about September 2016, KRISTAPS NAGLIS, the defendant, with the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) or 5325 or regulations prescribed under these sections, the reporting or recordkeeping requirements imposed by any order issued under Title 31, United States Code, Section 5326, or the recordkeeping requirements imposed by regulations prescribed under Section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508, did structure or assist in structuring, or attempt to structure or assist in structuring, transactions with one or more domestic financial institutions, to wit, NAGLIS did engage in multiple cash withdrawals of less than $10,000 from a domestic financial institution with the intent to evade federally imposed currency reporting requirements.

(Title 31, United States Code, Section 5324)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8.    I am a Special Agent with FBI and I have been personally involved in the investigation of this matter.   I have worked on this investigation with Special Agents of Homeland Security Investigations ("HSI").   This affidavit is based upon my investigation, my conversations with witnesses and other law enforcement agents, my review of bank records and websites, and my examination of physical evidence recovered from a co-conspirator not named as a defendant herein ("CC-1").   Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

9.    From my participation in this investigation, I know that since at least 2015, a group of predominantly Latvian and Lithuanian nationals operating in the United States and foreign countries have been engaged in a scheme to defraud consumers using fake online advertisements for, among other things, the sale of cars, boats, and construction or farm machinery.

10.    From conversations with victims of the scheme and from reviewing records provided by victims, various banks, and the New York State Department of State Division of Corporations ("DOS"), I have learned that the fraudulent scheme typically operates as follows:

a.    The conspirators create phony websites that use the name and owner information of legitimate businesses engaged in selling cars, boats, and machinery.  The websites contain vehicle advertisements that include images of cars, boats, or machinery that appear to be taken from other legitimate websites.  The phony websites also include a telephone number and/or email address for consumers to contact.  The conspirators also place similar advertisements on Craigslist, a website that allows users to advertise goods for sale, and in these advertisements also include a telephone number and/or email address for consumers to contact.

b.    Once a victim expresses interest in buying a vehicle or other item advertised, the conspirators provide the victim an invoice and sales agreement via email or the internet, with instructions to complete the transaction by wiring funds to a specified bank account.

c.    The specified bank accounts are held in the names of shell companies, which are established by scheme participants, who also open the associated bank accounts.

d.    After a victim wires the funds to the specified bank account, the conspirators cease communication with the consumer, take down the fraudulent website, and disconnect the telephone number associated with the fraudulent business.  The victim never receives the purchased car, boat, or machine.

11.    From reviewing bank records, I have learned that shortly after receiving the victims' wires, the conspirators

4

withdraw the fraudulent proceeds from the bank accounts, typically through structured withdrawals designed to avoid reporting requirements.  Conspirators then send a portion of the cash proceeds overseas via a money services business, such as MoneyGram, to other scheme participants located in Latvia, Lithuania, and other Eastern European countries.

KRISTAPS NAGLIS's Participation in the Scheme

12.  From my review of records provided by U.S. Customs and Border Patrol ("CBP"), I have learned that KRISTAPS NAGLIS, the defendant, is a Latvian national who entered the United States on or about April 12, 2016 on a three-month tourist visa.

13.  From my review of records provided by the DOS, I have learned that on or about April 19, 2016, KRISTAPS NAGLIS, the defendant, registered a domestic business corporation named "Nalison Corp."  NAGLIS provided a particular address in Jamaica, New York (the "Jamaica Address") as the address to which the DOS should mail legal process.  From checking the Jamaica Address on a database available to law enforcement agents, I have learned that the Jamaica Address is a residential address and there does not appear to be a business named Nalison Corp. located there.  Moreover, based upon the same database, it appears that another person resides at this address and NAGLIS does not reside at this address.

14.  From my review of records provided by Bank-1, I have learned that on or about April 20, 2016, KRISTAPS NAGLIS, the defendant, opened a bank account in the name of Nalison Corp. at a Bank-1 branch located in Manhattan, New York ("Bank Account-1").  Between the date that the account was opened until on or about September 9, 2016, Bank Account-1 had a balance no greater than approximately $557.50.

15.  From my review of records provided by Bank-1, including bank surveillance footage, I have learned the following:

a.  On or about September 9, 2016, Bank Account-1 received a wire transfer of $18,000 from another bank account.

b.  On or about September 12, 2016, KRISTAPS NAGLIS, the defendant, made three teller withdrawals of $9,700, $6,000, and $2,000 in cash from Bank Account-1 at three different Bank-1 branches in Manhattan.

5

16.   In or about November 2016, I interviewed a victim of
the online fraud scheme ("Victim-1").   From my interview of
Victim-1 and from reviewing materials provided by Victim-1, I
have learned the following:

a.   In or about September 2016, Victim-1 identified a
Caterpillar wheel loader that was being advertised for sale on
Craigslist.   Victim-1 responded to the advertisement, which was
listed on behalf of a fake vehicle dealer, via telephone and
expressed interest in purchasing the wheel loader.

b.   Following the initial telephone call, Victim-1
received an email from the purported seller, which contained
wire transfer instructions to transmit payment for the purchase
of the wheel loader to Bank Account-1.   The email stated that
the wheel loader would be delivered and the payment would be
held in escrow for a period of five days for Victim-1 to confirm
he was happy with the purchase.

c.   On or about September 15, 2016, Victim-1 went to
his financial institution and confirmed that Bank Account-1 was
a real bank account.   The same day, Victim-1 wired $22,500 to
Bank Account-1.   To date, Victim-1 has not received the wheel
loader.

d.   Victim-1 attempted to contact the seller via
email and telephone, but did not receive any response to his
email and discovered several days after he had wired his money
that the seller's telephone number was no longer operational.

17.   From my review of records provided by Bank-1,
including bank surveillance footage, I have learned the
following:

a.   On or about September 15, 2016, Bank Account-1
received a wire transfer of $22,500 from Victim-1.

b.   On or about September 15, 2016, KRISTAPS NAGLIS,
the defendant, made two teller withdrawals of $9,000 and $9,700
in cash from Bank Account-1 at two Bank-1 branches located in
Manhattan, New York.

18.   Based on my training and experience, as well as
conversations with other law enforcement agents, I have learned
that cash withdrawals at multiple bank locations in a day for
amounts less than $10,000 is often indicative of attempts to
evade currency reporting requirements and detection of fraud or
money laundering.

6

19.   I have reviewed records obtained from a social media website, and have determined that KRISTAPS NAGLIS, the defendant, is connected via social media to multiple other persons who appear to be participants in the same online fraud scheme, because they have also opened shell corporations in New York State and have opened bank accounts in the name of those corporations that have had similar suspicious patterns of large wire transfers followed by cash withdrawals.

WHEREFORE, deponent respectfully requests that KRISTAPS NAGLIS, the defendant, be imprisoned or bailed, as the case may be.

SA Christina L. Fox
Special Agent Christina Fox
Federal Bureau of Investigation

Sworn to before me this
21st day of December, 2016

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK